. Robertson, Ch. J.
The admission of the defendants on the trial that they “ held the occupancy of the space ” between the south side of one pier and the middle of a bulkhead between two piers beyond it, including the intervening bulkheads, by leases from the corporation of the city-of Hew York, which were read in evidence, virtually acknowledged an actual occupation of the bulkheads them *380 selves. Indeed the defendants actually claimed that they had no right to remove the incumbrances complained of, because they had covenanted to surrender the same as being part of the demised premises. So far from giving any right to the soil, such leases provide against receiving any compensation “ for the occupation of the top or surface of the piers for any purpose.” They were, in fact, a mere demise of the right of wharfage as an incorporeal hereditament. They, therefore, were not justifiable in occupying such space under such demises. (See Commissioners of Pilots v. Clark et al. 33 N. Y. Rep. 251, 264, per Denio, Ch. J.)
In addition to this, admission, the agent of the plaintiffs (Marsten) testified in substance, that the bulkhead between piers 30 and 31, which ran from pier to pier on the shore line, was occupied, by sheds, gates, buildings and fences by the defendants, and a large shed covered the whole space between such piers. There were gates, fences and a building, which were permanently affixed to the bulkhead and extended across the entire width; also a platform built beyond the bulkhead projecting iqto the water, averaging in breadth twenty-five feet from the string piece of the bulkhead, which covered the whole of the latter from pier to pier. The fence extended from the north side of pier 30 to the south side of pier 31. It was all inclosed by gates and fences. A building stood on the bulkhead between piers 31 and 32, close to the string piece, about six feet square, which was occupied by the defendants as a freight office. The space between a continuance of the lines of piers 30 and 31, extending from the outer edge of the bulkhead between them, to a line at some distance therefrom, and running parallel therewith along "Wqst street, appeared by a diagram exhibited on the trial, (proved to be correct,) to be inclosed, and, as was testified to, by a fence, interrupted only by six gates. On the "north side of pier 32, only a small office, six feet by nine in size, was occupied by the defendants as a delivery office, the use of which was discontinued, and it was removed to the south side of the pier.
*381 The first question of law presented is, if such sheds, buildings, gates and fences upon the bulkheads in question were as either loose materials, or built upon and affixed to them, obstructions incumbering such bulkheads, or interfering with their free use within the meaning of the 8th section of the statute of 1857, (N. Y. Sess. L. 1857, p. 487,) as amended by the 5th section of the act of 1858, (N. Y. Sess. L. 1858, p. 363,) the defendants are liable for not removing them, because they kept them there within the intent of such amended provision. The statute gives the plaintiffs the option to proceed either against those who place or those who keep obstructions upon piers or bulkheads, whom it makes equally amenable, since the former cannot always be so readily discovered. Eor the same reason, where there was a difficulty of discovering both, the plaintiffs had a right to remove merchandise. The defendants used and occupied the erections in question as their own, and they may, therefore, be fairly said to have kept them on the bulkheads within the meaning of the statute. As they formed no part of the demised premises, the defendants were not responsible for them to the owners. They might have removed them as incumbrances of the highway, or interfering with their right of wharfage. Their conduct was sufficient to have charged them in an action for a nuisance as continuing it. Their ownership or hiring them was immaterial; they may have.taken possession of such incumbrances tortiously ; they acted as their owners, and are,, therefore, liable for keeping them there.
The offense punishable under the statute is an interfering with a free use of a bulkhead, which is as general as it can be, since it is not limited either as to mode or persons. Nothing is said of an obstruction, as interfering either with commercial uses, or purposes of commerce or access to shipping or transaction of business. Indeed, no merchandise which incumbers the bulkhead is permitted by the statute to remain over twenty-four hours, after the notice it provides for is given. Bulkheads are part of the highway, and *382 entitled to be traveled over in the same way as any other part. The facility of passing round them, or leaving the other part unblocked up, does not affect the question. In Davis v. Mayor, &c. of New York, (14 N. Y. Rep. 524,) Chief Justice Denio lays down the rule that a “ permanent, habitual obstruction in a public street or highway is an indictable nuisance, although there he room left for carriages to pass.” Even a benefit to the community by such an obstruction does not justify any interference with the ordinary rights of the public. (Commissioners of Pilots v. Clark et al. 33 N. Y. Rep. 265. King v. Ward, 4 Ad. & El. 384. King V. Russell, 6 Barn. & Cress. 566.) The statute evidently intended to commit to the plaintiffs the guardianship, of so much of the highways as bordered the water, against all nuisances by incumbrances, and not to separate those engaged in' commerce from the rest of the community, so as to have their interests alone protected. And it used the proper language to authorize a prosecution for all such nuisances. As it was impossible from the very nature of the erections in question to prove that they did not interfere with the free use of the wharves, all questions attempting it put to witnesses were properly excluded. The ruling of Chief Justice Denio, in the case of the Commissioners of Pilots v. Clark, (ubi supra, pp. 265, 266,) before referred to, that the judge (presiding on the trial) might properly have charged that a fence erected and placed in a similar manner to that in question, was in itself an incumbrance of the pier, warranted a similar course in this case. The judge who presided was therefore right in withdrawing all consideration of the question of fact from the jury.
It was contended, however, that the defendants were not liable because no proper notice within the meaning of the statute in question had ever been given to them to remove the erections complained of. The provision in question requires the plaintiffs to notify either the persons who had placed, or those who kept merchandise or other obstructions on a bulkhead which incumbered it or interfered with its free *383 use to remove such obstruction; meaning, of course, the article obstructing, and not merely a removal of the effect produced by it. The notice actually given was “to remove from the bulkheads between piers Nos. 30 and 31, and Nos. 31 and 32, and Nos. 32 and 33 North river, the buildings, sheds, gates and fences, which are now there placed or kept by the defendants. The objections taken to this notice are: First. That it does not undertake to pronounce the articles enumerated an obstruction. Secondly. That if it leaves the defendants to determine what articles they had placed or kept on the bulkheads, it is not a sufficient description; and, Lastly, if intended to require that all the articles on the bulkhead should be removed, it included a building between piers 32 and 33, neither placed nor kept there by the defendants.
These objections are based on the idea that the defendants are entitled to retain every thing which they have put or kept on the bulkheads in question, whether its free use is thereby obstructed or not; unless the notice to remove extends to, and does not include any more than exactly, what they have so put or kept there. Upon that principle a mistake of a single article, either as to its being put or kept by the party notified on the bulkhead, or being part of the obstruction, would be fatal, and the public highway would remain obstructed without the power of punishing under the statute. There might be some ground for such doctrines, if the articles to be removed were innocently on the bulkhead, and only became noxious by their being kept there contrary to the requisition, but the penalty is given, not for disobeying the orders of the plaintiffs, but, in the words of the statute, for “ a failure to comply with such notice, and remove such obstruction.” The offending party receives no injury by being notified to remove too much; he is to be supposed to know whether he has violated the law already, and the notice is neither an accusation nor indictment; nor does it form the basis of a legal proceeding. It is true, it is a condition precedent to a right to recover, but is a simple warning to remove a nuisance within twenty- *384 four hours, or he subject to the statutory penalty. The plaintiffs had no power to determine what was an obstruction, and what was not, any more than to decide whether the defendants created it or not. After such warning, both parties acted at their peril; the defendants in omitting to remove the articles complained of, the plaintiffs in bringing an action for the penalty, if they did not. What was to be removed was described with sufficient particularity to enable the defendants to know what was intended. They were then bound to decide for themselves, whether they were responsible for its being an obstruction. The requisition by such a notice, differs entirely from that regulated by the second section of the statute of 1860, involved in the case of Commissioners of Pilots v. Vanderbilt, (31 N. Y. Rep. 265.) The notice under that act, needed a previous determination by the plaintiffs, as a board acting judicially, of the time within which a supposed encroachment in the harbor of Eew York should be removed. The statutes of 1857 and 1858, prescribe the time for the removal of the offending articles after notice, until the lapse of which no penalty begins to be incurred; so that nothing is left to the discretion of any one. They, moreover, in addition to a notice merely calling attention to the nuisance as in the statute of I860,'explicitly prescribe that there should be a notification or warning to remove it. Such warning is, of course, futile and void as to articles, which "form no part of any obstructions, or for whose maintenance as part of one, the defendants are not responsible. But if they are responsible for the- presence of some of the articles on the bulkhead, which they are warned to remove, and those articles obstruct the free use of such bulkhead, I cannot perceive on what principle their failure to -remove them after notice, should not make them liable, although they have in the written document containing such notice been also required to remove those which are not obstructions, or for whose presence on the bulkhead they are not responsible. The statute, besides, does not prescribe the form of the notice, otherwise than *385 that it shall notify the person served with it to remove the designated obstruction. Whatever else, therefore, is in it is immaterial. Nor is there any objection to combining notices to remove obstructions on different bulkheads in one manuscript. In this case the defendants were guilty of incumbering three different bulkheads, and liable, therefore, to three sets of penalties, and were notified to remove such incumbrances on each bulkhead. The plaintiffs, however, thought proper only to claim one penalty, and had a right to select therefore, any one of the failures of the defendants to remove, what they had been warned to remove, as the foundation of the penalty. The notice did not serve to make the defendants more or less, the authors or maintainors of the obstruction complained of; they knew whether they were so, and were not required to be governed by it, in determining' whether they were or not. Whatever the present notice therefore may contain, beyond the designation of what was an obstruction, for which the plaintiffs considered the defendants responsible, and for which they were so in fact, a notification to remove it was surplusage, and does not vitiate the intended effect' of the notice as a warning. But, in fact, it actually limits the articles, which the defendants are required to remove, to those placed or kept by them on the bulkheads, enumerated therein, which they are to be presumed to know; and does not require them to remove all the articles on such bulkheads.
The necessity of serving with the notice given a copy of the law, under the first section of the statute of 1865, (N. Y. Sess. L. 1865, ch. 712,) is confined to notices served by the president of the plaintiffs, without their previous' authority. In this case, the.plaintiffs themselves authorized the notice.
The law makes no distinction as to the days of the week, for which the penalty is to accrue. A free use of a bulkhead may be as necessary on Sunday as any other day. The plaintiffs were, therefore, entitled to recover for the *386 full number of days, since the twenty-four hours after the notice were up, without regard to Sundays.
These considerations dispose of all the requests to charge, as well as the exception to the charge. No error having been committed on the trial, the exceptions must be overruled, and judgment given for the plaintiff for the verdict, with costs.
Garvin, J. concurred.